In the Matter of the Real Property of ELAM A. HATCH, Deceased.

RAY SEMON HATCH, as Executrix, et al., Respondents; WILLIAM R. BANCROFT et al., Appellants.

SALE OF DECEDENT'S REAL ESTATE — WHEN PROCEEDS THEREOF CANNOT BE USED TO PAY EXPENSES OF ADMINISTRATION — CODE CIV. PRO. §§ 2749–2801. Under the provisions of section 2793, construed with other sections of title 5 of chapter 18 of the Code of Civil Procedure as it read at the time of the commencement of this proceeding in June, 1900, no part of the proceeds of real estate sold for the payment of the debts and funeral expenses of a decedent can be used to reimburse the executrix for the expenses of administration, consisting mainly of the amount paid to the attorneys employed by her in a contest over the probate of the will.

Matter of Hatch, 97 App. Div. 496, reversed.

(Argued May 29, 1905; decided October 3, 1905.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 11, 1904, which reversed a decree of the Monroe County Surrogate's Court made in a proceeding for the sale of real property of a decedent for the payment of debts, disallowing the claim of the executrix for expenses of administration of said decedent's estate.

The facts, so far as material, are stated in the opinion.

*Horace McGuire* for appellants. Prior to September 1, 1904, there was no authority for the reimbursement of an executor or an administrator for expenses of administration or will contest out of the proceeds of a decedent's real estate. (*Matter of Foley*, 39 App. Div. 248 ; *Matter of Summers*, 37 Misc. Rep. 575; *Matter of Woodard*, 13 N. Y. S. R. 161; *Matter of Wilcox*, 11 Civ. Pro. Rep. 421; *Matter of Quatlander*, 29 Misc. Rep. 566 ; *Ball* v. *Miller*, 17 How. Pr. 300.)

*Clarence W. McKay, Fletcher C. Peck* and *William A. Sutherland* for respondents. The executrix is entitled to the

payment of the sum found due to her on the judicial settlement of her account in preference to the claims of the general creditors. (*Ball* v. *Miller*, 17 How. Pr. 300; *Shute* v. *Shute*, 5 Den. 1; 2 Jessup's Surr. Pr. [2d ed.] 1305.)

Vann, J. In this proceeding, to sell real estate for the payment of debts, the material facts are as follows: Elam A. Hatch, a resident of the county of Monroe, died February 4th, 1899, leaving a will, which after a long contest was finally admitted to probate. (*Matter of Hatch*, 57 App. Div. 635; 75 App. Div. 609; 176 N. Y. 592.) In the meantime there was temporary administration of the estate, which was superseded by permanent administration upon the probate of the will. The personal assets were exhausted and the debts and funeral expenses were wholly unpaid, so that it became necessary to sell the real estate. On the 5th of June, 1900, this proceeding was commenced for that purpose, and no question is raised except as to the disposition of the proceeds.

On the 26th of May, 1904, a decree distributing the proceeds of the sale was made by the surrogate. The amount to be distributed was the sum of $4,140.65, but after deducting $926.77, the expenses of the proceeding, and $890.98, the gross sum accepted by the widow in lieu of dower, there remained but $2,322.94 to be divided. The funeral expenses amounted to $135.54, the debts duly established to $2,521.34 and the expenses of administration, including the amount paid by the executor in the litigation over the will, to $4,756.95. The sum last named was fixed upon a judicial settlement of the accounts of the executor on the 15th of February, 1902, and the decree then made adjudged among other things " that there is due the executor on the settlement of this, her account, for expenses of administration and will contest actually paid by her, the sum of $4,756.95." The executrix claimed that the entire proceeds of the real estate, less the expenses, should be applied on this claim and that neither undertaker nor creditor should have any part thereof. (Code Civ. Pro. § 2730.) The decree of distribution directed the

21

payment of the funeral expenses in full and that the remainder · of the net proceeds, amounting to $2,187.40, should be applied *pro rata* upon the debts.   The claim of the executrix " to be reimbursed for expenses of administration and will contest" was " disallowed and denied."   Upon appeal by the executrix and others, the Appellate Division by a divided vote reversed the decree in so far as it disallowed said claim, and directed that it should be allowed and that the distribution should be readjusted accordingly.   Certain of the creditors now appeal to this court.

The question presented is whether the executrix shall be reimbursed out of the proceeds of the real estate, to the exclusion of creditors, for the expenses of administration, consisting mainly of the amount paid to the attorneys employed by her in the contest over the will.   The answer to this question depends upon the construction of paragraph 6 of section 2793 of the Code of Civil Procedure as it stood when this proceeding was commenced, which was prior to the dates when certain amendments went into effect. (L. 1900, ch. 120 ; L. 1904, ch. 750.)   In our discussion of the subject we shall allude exclusively to the statute as it was before the passage of the acts last cited.

While real estate of a devisee cannot be sold to pay the expenses incurred by an executor in a contest over the will, it is claimed that when actually sold to pay debts, such expenses must be paid out of the proceeds before any part can be applied upon the debts, or even on the funeral expenses.   This in effect would take the property of one person to pay the debts of another, for the devisee does not need probate of the will by the surrogate in order to establish his right to the land.   A devisee can sell, mortgage and convey without such probate and can take possession or maintain ejectment.   Real estate is a kind of property in which the executor has no interest and he cannot incur expenses on the credit thereof.   Tenderness for the rights of heirs and devisees for time out of mind has been a marked characteristic of the common law and the statute before us should be read

in the light of that fact in order to ascertain the real intention of the legislature. Laying aside the question of power, let us see whether the legislature intended to depart from the common-law rule to such an extent as to sacrifice the rights of devisees, not for the payment of debts, which, of course, would be proper, but to pay the expenses of administration in which the devisees have no legal concern, except incidentally as a matter of evidence. (Code Civ. Pro. § 2627.)

The proceeding before us is regulated by title 5 of chapter 18 of the Code of Civil Procedure, entitled "Disposition of the decedent's real property, for the payment of debts and funeral expenses. Distribution of the proceeds." (Code Civ. Pro. §§ 2749, 2801.) We cite and quote from the statute before the Code amendments went into effect. The Code provides that the real property of which a decedent died seized may be sold to pay his debts, funeral expenses and judgment liens existing at his death. (§ 2749.) At any time within three years after the decease a proceeding to sell may be instituted by the executor or administrator, by a person holding a judgment lien upon the real property of the decedent, or by any other creditor, but it is limited to the three objects above named. (§ 2750.) The petition must show the unpaid debts of the decedent, the names of the creditors, the amount of each claim, the sum due for funeral expenses, the names of the husband or wife and of all the heirs and devisees and, if presented by the executor or administrator, the amount of personal property which has come into his hands and the application thereof. (§ 2752.) Creditors must be cited and heirs or devisees may contest every fact essential to jurisdiction. (§ 2755.) If a debt is merged in a judgment against the executor, only the amount recovered, exclusive of costs, can be allowed. (§ 2757.) "The decree must determine and specify the amount of each debt * * * as a valid and subsisting debt against the decedent's estate, or as a just and reasonable charge for funeral expenses." (§ 2758.) Before a decree to sell can be made it must be established to the satisfaction of the surrogate that " the debts, or liens, or both, for the pay-

ment of which the decree is made, are the debts of the decedent, or are just and reasonable charges for his funeral expenses, or are liens by judgment existing at his death upon his real property, or upon some portion thereof; and are justly due." (§ 2759.) The land or so much thereof as is necessary "in order to pay the debts, judgment liens thereon, and funeral expenses of the decedent" may be mortgaged, leased or sold. (§§ 2760, 2761.) The proceeds are distributed upon notice, and at the time designated "the surrogate must hear the allegations and proofs of the creditors or lienors, and of the persons interested in the estate, or in the application of the proceeds, respecting any demands against the decedent or for his funeral expenses," etc. (§ 2788.)

These are among the leading steps required in order to create the fund to be distributed, and the rule of distribution appears in section 2793, which prescribes the following order of payment: 1. The expenses of the proceeding to sell, mortgage or lease. The second, third and fourth are not now material. 5. Judgment liens existing at the decedent's death according to their respective priorities. 6. "Out of the remainder of the money, must be paid the sum, if any, which has been found to be due to the executor or administrator, upon a judicial settlement of his account, after applying thereupon the proceeds of the personal property. But this subdivision does not authorize the repayment to an executor or administrator, of any sum paid by him to a creditor of the decedent, exceeding the proportion which that creditor would be entitled to receive from the estate of the decedent, upon the distribution of all the assets of the decedent, and the proceeds of property disposed of as prescribed in this title." 7. The reasonable funeral expenses of the decedent. 8. The other debts of the decedent as established. After payment of these classes of claims in the order named, if any surplus remains it must be paid over to the heirs and devisees.

Thus we have a practice act governing the disposition of real estate for the payment of debts and funeral expenses and all the provisions thereof should be read together. While

paragraph 6 of section 2793 is broad enough to cover payment of the expenses of administration it would be very remarkable if the legislature intended that the expense of contesting the will should be paid out of money derived from the sale of land belonging to devisees in preference to the funeral expenses and the debts of the decedent. When paragraph 6 is read as an entirety it is capable of the construction that the first sentence relates to the same subject as the second, and that the sum found due to the executor is the amount paid by him to creditors of the decedent for which he would be entitled to reimbursement subject to the limitation mentioned. (*Ball* v. *Miller*, 17 How. Pr. 300.) The statute thus construed would simply codify the rule laid down in the case cited, as it has in other instances, so as to embrace the entire subject. (L. 1863, ch. 400.) Not only should paragraph 6 be read as an entirety, but it should be read in connection with all other provisions relating to the sale of real property for the payment of debts. When thus read we find that when this proceeding was commenced there was no authority for a sale to pay the expenses of administration, but only for the purpose of paying the debts and funeral expenses of the decedent. While the statute specifically names the various classes whose claims are to be paid and requires a statement of the amount claimed by each person, as is necessary in order to determine the sum to be raised and how much of the land should be sold for the purpose, the expenses of administration are not included, yet why should they be omitted if they are to be paid? How can the court decide whether a sale of all or only a part of the real estate is necessary, unless proof is given as to the entire amount required to discharge all claims lawfully chargeable upon the land? Moreover, debts are a lien upon the land for three years, yet the paragraph in question, as construed below, requires payment of the expense of administration, which is not a lien, in preference to the general lien of creditors prescribed by law. It is not reasonable to hold that the legislature intended to authorize payment of a claim for general expenses out of the land

and yet to deny the right to sell land for that purpose. (*Matter of Quatlander*, 29 Misc. Rep. 566 ; *Matter of Summers*, 37 Misc. Rep. 575 ; *Matter of Meakim*, 5 Civ. Proc. Rep. 421 ; *Matter of Woodard*, 13 N. Y. St. Rep. 161.) The recent amendments of the statute indicate that the legislature was of the opinion that executors were not sufficiently protected theretofore, and thus confirm the construction we have adopted. (L. 1900, ch. 120 ; L. 1904, ch. 750.)

While the question is close and difficult, we think that when all the provisions relating to the sale of real property for the payment of debts are read together, the intention of the legislature was not to authorize payment of the expenses of administration out of the proceeds of real estate, but to restrict the account mentioned in the first sentence of the paragraph under consideration to the amount paid in anticipation upon the claims of creditors, as indicated by the last sentence thereof. We have not construed the statute in its present form, but have construed it as it was when the question discussed arose.

The order of the Appellate Division should be reversed and the decree of the surrogate affirmed, with costs against the respondents in all courts.

CULLEN, Ch. J., GRAY, O'BRIEN. BARTLETT, HAIGHT and WERNER, JJ., concur.

Order reversed, etc. _____