(60 Misc. Rep. 647.)

## In re LISCOMB.

(Surrogate's Court, Kings County. October, 1908.)

EXECUTORS AND ADMINISTRATORS (§ 401*)—SALE OF DECEDENT'S LAND ON FORE-CLOSURE—DISTRIBUTION OF SURPLUS—EXPENSES.

Where there are no personal assets, the proper expenses of administration are payable from the proceeds of a sale of decedent's land to pay debts and funeral expenses, and a fund arising on foreclosure against decedent's real estate is to be so used, under Code Civ. Proc. § 2799.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 401.*]

Application of Sarah E. Liscomb, executrix of Joseph L. Liscomb, deceased, for distribution of surplus on foreclosure sale. Decree rendered.

Eugene Sweeney, for petitioner.
William W. Bross, for respondent.
Samuel C. Worthen, special guardian.

KETCHAM, S. The question is whether or not the expenses of the administration of an estate are payable from the proceeds of the sale of decedent's land for the payment of debts and funeral expenses. While the present proceeding is for the distribution of the surplus arising upon foreclosure against the decedent's real estate, the fund is to be disposed of as if it were the proceeds of a sale pursuant to decree. Code Civ. Proc. § 2799.

Chapter 750, p. 1907, of the Laws of 1904, contains a radical amendment to the portion of the Code providing for the sale of decedent's

lands for the payment of debts and funeral expenses. Under the statute, as it stood before this change, it was determined, after conflict and uncertainty, that the expenses of administration were not payable from the proceeds. Matter of Hatch, 182 N. Y. 320, 75 N. E. 153. The case cited arose before the statute was amended, but reached the Court of Appeals after the amendment. That court avoided the construction of the act in its later form; and, while they held as above indicated, they used expressions which are regarded by the respondent executor in this proceeding as an intimation that the court were persuaded that under the new statute these items would be a proper charge upon the fund. No decision is found in which the question has been treated, but it has been discussed by writers. Heaton's Law of Surrogate's Courts; Noble, Disposition of a Decedent's Real Property, etc., 77, 193, et seq.

The author last quoted argues with great care and fullness that under the new act, as under the former one, these expenses are not to be paid from the fund derived from the lands. Before this view can prevail, sections 2761 and 2764 of the Code, together with the provisions regulating accountings by executors, must be regarded. By section 2761 it is provided that:

"The executor or administrator must proceed to execute the decree in the same manner, and the execution thereof shall have the same effect, as if he were acting as executor of the decedent under a like power contained in a will of said decedent duly executed and proved. He shall apply the proceeds of the real property mortgaged, leased or sold in the same manner as if he had acted under such a power of sale contained in a will and all persons interested in the execution of the decree shall have the same remedies for the enforcement of the decree and the application of the proceeds that they would have had if the executor or administrator were acting under such a power."

This provision, so far as it relates to the disposition of the fund, is a substitute for the precise and labored directions of former section 2793. Its obvious intention is that the executor, no longer guided in every detail of distribution, must find his duty and pursue it by first ascertaining the disposition which would be made by an executor exercising a power of sale, and then doing that which the executor under the power would have done.

Is it, then, the duty of an executor under the power supposed to pay the administration expenses? If it is, it is equally the duty of the executor who has sold under decree. An executor given the power is under the duty of qualifying himself for its exercise. The first step in this respect is to secure probate of the will. This is not only his general obligation toward those who are interested in the personal estate; but, in the absence of all personalty, and without consideration for legatees, he owes it to those concerned in the power. In a case where it makes no difference to legatees, it is still his duty to procure the will to be proved and to assume office under it; for in no other way can the power come into play. It follows that the expense incident to probate is to be charged upon the fund which the power produces, when the exercise of the power is the only end to which the probate is directed.

It is as much the duty of the executor in the given case to maintain himself in the attitude which is essential to the execution of the power

as it is to assume that attitude. Hence all expenses which are incurred in the course of administration necessarily relate to the power; for without those outlays the executor could not preserve himself in office, and the power would fail. If there be an act for the neglect of which the executor may lose his office, he should do that act as an incident of the power; and for the attendant outlay he may properly be indemnified from the fruits which the outlay has made possible.

The Code provisions applicable to accountings reinforce these views. The executor, donee of a power of sale, may be compelled to account where he has sold. Section 2726. His account must display all his expenditures, not merely in the execution of the power, but "on account of the estate of the decedent." Section 2729. On the settlement of the account "in all cases such allowance must be made (to executors) for their necessary expenses actually paid by them as appears just and reasonable." Section 2729. These provisions are all capable of but one meaning, when applied to an executor whose account covers nothing but the proceeds of sale under a power; and they are incoherent if they do not mean that he shall be allowed his expenses of administration from the proceeds.

Commissions are allowable on the amount derived from the sale under the power; but these commissions are not merely a recompense for the fulfillment of the power. The statute measures commissions to an executor "for his services" (section 2739) in words which embrace the general labors of administration. There is no expense more clearly administrative than the executor's compensation for administering, and the same statute which allows the commissions in a case where there are no assets except the proceeds of the sale associates with the commissions the necessary expenses. Upon this reasoning it is apparent that, in the case imagined, an executor without personal assets must apply the proceeds of the execution of his power to his expenses, both in procuring and in sustaining the office which is the prerequisite to such exercise. It follows that an executor, required to apply the proceeds of a judicial sale in the same manner, is equally required to pay the same expenses.

Section 2764 of the Code indirectly and partially reveals the legislative purpose. It is there provided that, upon a purchase by a creditor, the amount which may be allowed to him upon the purchase price on account of his claim is, in one instance, dependent upon whether the proceeds are sufficient to satisfy, among other things, "the costs and expenses of administration." However unfortunate may be the sort of legislation which permits its meaning to escape only by a verbal accident, it is not conceivable that this item of administration expenses was here intended to enter into the transaction, unless it was among the items to which the proceeds were generally devoted. The mind which contemplated that the costs and expenses of administration were in one casual event to be paid or deducted in the course of the sale may rationally be said to have contemplated the satisfaction of the same item in any event. It cannot be said that the Legislature meant that these expenses were payable only in case a creditor should purchase, and that upon the purchase by a stranger no such payment could be permitted.

Of course, in the case of a purchase by a creditor, where the proceeds are insufficient to satisfy the expenses of administration and the debts and funeral expenses, it is evident, despite the infelicities of the section, that all creditors are to bear a reduction of their claims proportioned to the aggregate cost of administration; for any other interpretation of the section would be intolerable. We must choose between two constructions: The expenses of administration are always to be paid in the absence of personalty, or the alternative must be accepted that they are not generally payable, but are always to be paid in the unrelated contingency that a creditor shall purchase at the sale.

The proper and necessary expenses of administration are payable from the fund, and the hearing will proceed in accordance with this conclusion.

Decreed accordingly.