In the Matter of the Estate of MARIA CILENTO, Deceased.

Surrogate's Court, Richmond County, November 20, 1933.

*Anthony A. Zerilli,* in person.

*Hackenburg & Schwartz,* for the devisee, to be substituted in place of Anthony A. Zerilli.

*Peter F. Gulotta,* for the surviving spouse.

*John A. Cosgrove,* for the executor.

SMITH, S.   Decedent left a will probated November 21, 1932, under which letters testamentary were issued to the executor named therein on the same day.

The will specifically devised the only real property owned by decedent to her aunt, one Raffael Visco, bequeathed a legacy of $1,000 to the surviving spouse and the residue of the estate to a second cousin, and contains a power of sale.

The surviving spouse filed a notice of election to take the share of the estate to which he would be entitled as in intestacy on December 3, 1932.

The devisee of the real property, by her attorney in fact, entered into an agreement in writing with the applicant on May 24, 1933,

whereby applicant agreed to protect the interest of devisee, and was to receive as compensation " for his services from any settlement or recovery ten (10) per cent of the entire interest that may be secured for Raffael Visco whether it may be in property or in cash."

The applicant on July 8, 1933, filed a notice, " In the Matter of Estate of Maria Cilento, deceased."

Section 63 of the Surrogate's Court Act provides that a " party of full age may * * * *appear* and prosecute or defend a *special proceeding* in person, or by attorney," but as the proceeding for the probate of the will had been completed, and the proceeding to fix amount of transfer tax, and the proceeding for a judicial settlement had not been begun, there was no proceeding pending at the time the notice of appearance was filed, and the appearance was of no force or effect.

An interpretation of the agreement of retainer would indicate that the meaning of the word " secured " in the clause, " that may be secured for Raffael Visco," was that applicant was *to obtain or get possession* of the interest of the surviving spouse for the devisee, and not to mean, to.put beyond the chance of losing or not receiving the half of the devised property still possessed by her, for the title to the devised premises had vested in the devisee upon the death of the testatrix, subject to the right of the surviving spouse to elect to take his share as in intestacy, and it was not even necessary to probate the will in order to establish the devisee's right to the land. (*Matter of Hatch*, 182 N. Y. 320.)

The executor filed his account and petition for final judicial settlement of the same on July 28, 1933, but the citation was not issued until after application had been made to substitute other attorneys, " In the Matter of the Estate," on October 13, 1933. During the period from the signing of the retainer on May 24, 1933, until the application for substitution was made, on October 13, 1933, applicant, as stated in his affidavit for compensation, performed services in connection with his employment, such as making an examination of the papers in the probate proceeding and the notice of election by the surviving spouse, having his associate make copies of some of said papers, engaging counsel and procuring his advice as to the constitutionality of the amendment to the Decedent Estate Law giving a right of election to a surviving spouse, negotiating with the surviving spouse to induce him to relinquish his right to any interest in the real estate devised, which said surviving spouse quite naturally refused to do, and consulting with the attorney for the executor many times, but for what purpose and to what effect does not appear, but he did not bring a proceed-

ing, under section 145-a of the Surrogate's Court Act, to determine the validity and effect of the election by the surviving spouse, and did not appear and contest the validity of the election in the proceeding for judicial settlement, of which he had knowledge, as he could have done, although a citation had not been served, under subdivision c of section 41 of the Surrogate's Court Act.

The account shows a surplus of nearly $9,000 of personalty after payment of claims and expenses, but does not show that any part thereof belongs to the devisee or that the executor exercised any control over the real property or attempted to or was required by the persons interested to sell the same, or that the election of the surviving spouse was in any way disputed.

It does not appear that any of the services performed by applicant tended to a settlement of recovery for the devisee, and his statement that such services were of the value of $900, and that he should have at least $750 for such services, is preposterous. The devised premises were appraised in the transfer tax proceeding at $9,800, and had applicant in any way succeeded in securing for the devisee the interest which became the property of the surviving spouse upon his election to take the same, the amount of applicant's compensation could not have exceeded the sum of $490; as applicant did not succeed in procuring anything for the devisee by negotiations and did not bring a proceeding to endeavor to do so, I find that any services performed by him had no value and that he is not entitled to any compensation.

Possibly it may be asserted that the surrogate had no authority to pass upon the application for the reason that the executor cannot be compelled to account for the real estate. (*Matter of Fernbacher*, 5 Dem. 219, which held that an attorney may, by agreement with his client, have a lien upon his client's interest in the estate, but such an agreement cannot be enforced by the surrogate upon real estate for which the executor cannot be made to account.) But the applicant has no lien. For a lien does not obtain until the commencement of a proceeding (Judiciary Law, § 475), and no proceeding was begun; or that authority is lacking for the reason that although the account shows a surplus of personalty of nearly $9,000, the representative has no funds in hand belonging to the devisee.

Section 231-a of the Surrogate's Court Act, under which the application for compensation is made, provides that " the surrogate shall have power to hear an application for and *to fix and determine* the compensation for an attorney for services rendered * * * to a devisee," and "*may* direct payment * * * from the funds * * * belonging to any * * * devisee." This authority

was evidently intended to permit a surrogate to determine the amount of compensation due an attorney whether or not there were funds belonging to a devisee in the hands of a representative, for the direction to pay, from funds on hand, is permissive and the surrogate should not be required to direct payment in some instances, for example where to direct payment might cause loss by sale of securities belonging to the devisee and others, but the authority to fix and determine is absolute even where there are no funds and where compensation is allowed the payment can be enforced through the medium of section 81 of the Surrogate's Court Act.

As the applicant has not appeared in the pending proceeding, the court is without authority to order a substitution of attorneys. (*Matter of Krakauer*, 33 Misc. 674.)

Proceeding dismissed.   Enter decree accordingly.